# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Steven L. Scott,

     Plaintiff

v.

James Cox et al.,

    Defendants

Case No.: 2:17-cv-00702-JAD-BNW

**Order Granting Motion for Summary Judgment on Behalf of Defendants Garcia, Gutierrez, Lambey, Clark-Carrillo, and Williams**

[ECF No. 90]

     Pro se prisoner Steven Scott brings this civil-rights action against prison officials at the Southern Desert Correctional Center, alleging primarily that the facility's policies and procedures for dispensing a common-fare diet violated his First and Fourteenth Amendment rights and that they retaliated against him for filing grievances. Five of those defendants—Gabriela Garcia, Benjamin Gutierrez, Gillian Lambey, Sonya Clark-Carrillo, and Brian Williams—move for summary judgment on Scott's religion-and-retaliation-based claims. Because they have demonstrated that Scott is precluded from relitigating many of them on res judicata grounds, and Scott has not shown an issue of fact to support the remaining claims against them, I grant their motion. I then refer this case to the magistrate judge for a mandatory settlement conference with the remaining parties.

## Background

     In the mid-2010's, Scott sued a host of Nevada prison officials in Nevada state court, claiming that they interfered with his ability to receive the common-fare meal that is provided to Muslim and Jewish inmates at the prison, violating his First Amendment rights.[1] According to Scott, the prison's process for determining who can access those meals—an application and

---

[1] *See* ECF No. 45 at 4–14 (summarizing Scott's cases against the officials).

1 interview—also violates the First Amendment and Equal Protection Clause.  One of Scott's

2 lawsuits involved his allegation that he submitted another application in 2015 after his previous

3 request was denied.  After he was unsuccessful in the state court, Scott brought his case across

4 the street to federal court.  But many of his federal claims rested on allegations that were

5 previously resolved in the state court, so I dismissed several of them last year and permitted him

6 to proceed only on those based on allegations that occurred in 2018 or later.[2]

7       Scott then filed a second amended complaint.  In it, he reasserts many of his 2014–2017

8 allegations that he was wrongfully denied access to his meals, and he adds that Brian Williams

9 was directly involved in those claims when he reviewed and denied Scott's grievances.[3]  He also

10 alleges that, after he filed a lawsuit against Gutierrez, Gutierrez retaliated against him—calling

11 Scott into his office and intimating that he was going to get Scott fired from his prison job.[4]

12 Scott claims that Gutierrez then conspired with Clark-Carrillo and a group of others to avoid any

13 investigation into Scott's grievance by dealing with the matter in-house instead of sending it to

14 the Inspector General.[5]  Garcia, Gutierrez, Lambey, Clark-Carrillo, and Williams now move for

15 summary judgment on all claims against them.

16 **Discussion**

17 **I.**    **Legal standard**

18       Summary judgment is appropriate when the pleadings and admissible evidence "show

19 that there is no genuine issue as to any material fact and that the movant is entitled to judgment

20

21 _____

22 [2] ECF No. 45.

   [3] ECF No. 78 at 12.

23 [4] *Id.* at 19–21.

   [5] *Id.* at 21.

2

as a matter of law."[6]  On summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[7]  The moving party need not produce evidence on issues where it does not bear the burden of proof at trial—it need merely demonstrate that the evidence shows the absence of a genuine material factual issue.[8]  If it does, the burden shifts to the party opposing summary judgment to identity and provide "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists."[9]

## II.    First Amendment religion claims

When I dismissed on res judicata grounds Scott's claims about the prison's common-fare-diet application process related to events occurring before 2018,[10] I noted that his claims stemming from any later events could proceed.[11]  Scott's second amended complaint revives those earlier claims without permission.  It contains scant allegations about events occurring post-2017, and none are in the context of his First Amendment claims.  Instead, his first two claims center on his belief that the defendants should have overturned his grievances and permitted him to receive the common-fare meals without testing him about his religion in 2015.[12]  These claims are nearly identical to those I previously dismissed against Lambey and Garcia, so I dismiss them again.  And though Scott argues that this time is different because he now alleges that Williams directly participated in the action, his sole allegation against Williams

---

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[7] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[8] *Celotex*, 477 U.S. at 323.

[9] *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009).

[10] ECF No. 45 at 7–11 (order granting in part motion to dismiss).

[11] *Id.* at 12.

[12] ECF No. 78 at 4, 7–10, 12–15.

for his 2015 conduct is that he wrongfully denied Scott's grievances.  But as the defendants note, this is not a sufficient basis to establish that Williams participated in a deprivation of rights.[13]  So I again dismiss Scott's First Amendment religion claims (Counts I and II) against Lambey and Garcia for the same reasons I dismissed them previously; and I grant summary judgment on this claim in Williams's favor.

## III.    Scott's equal-protection claim against Williams, Lambey, and Garcia

As part of Scott's theory that he had to jump through many hoops to get a common-fare diet, he also alleges that the prison treats inmates differently based on their religions, violating the Equal Protection Clause.[14]  He claims that throughout 2014–2018, 90% of Jewish inmates were denied access to meals while only 10% of Muslim inmates were denied access.[15]  The defendants argue that they did not personally participate in any of Scott's interviews to assess his entitlement to a common-fare diet.[16]  Scott agrees that "Garcia [and] Lambey did not personally participate in" the conduct underlying this claim,[17] but he claims that Williams did because he required Scott to reapply for the meals when his first request was denied.[18]  As Scott's grievance report makes clear, however, Williams did not require Scott to be retested, he merely informed Scott that he could reapply if he was denied an earlier application.  Beyond his bald allegations

---

[13] *See Faye v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (requiring personal participation in a § 1983 action); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (holding that "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [the] plaintiff, does not establish personal participation under § 1983"); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam).

[14] ECF No. 78 at 16.

[15] *Id.*

[16] ECF No. 90 at 12.

[17] ECF No. 110 at 11.

[18] *Id.*

that Williams was directly involved, Scott offers no evidence to support his equal-protection claim.[19]  As I previously noted, an individual must personally participate in the underlying constitutional violation to be liable under § 1983.[20]  Because there is no evidence that Williams, Garcia, or Lambey personally participated in the conduct underlying Scott's equal-protection claim, I grant summary judgment in their favor.  So this claim proceeds against Jerry Howell, Kim Thomas, and Chaplain Youngblood on Scott's 2018 allegations only.[21]

**IV.    Scott has failed to demonstrate that Gutierrez retaliated against him.**

In the prison context, a plaintiff must prove five elements to establish a retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[22]  Gutierrez argues that Scott cannot demonstrate that a conversation between them ever took place and, even if he could, asking Scott where he works at the prison and who he works for does not intimate any future adverse action.[23]  Though Scott argues that he took Gutierrez's statements as a threat,[24] he has not offered any evidence to support his claim that this conversation took place.  Instead, he argues that one of the defendants' exhibits shows that "there was contact."[25]  It does not.  The declaration that Scott refers to merely states that Scott "was not

---

[19] ECF No. 91 at 8 ("Since your denial you are at a time period that you may re-apply.").

[20] *Faye*, 607 F.2d at 862.

[21] ECF No. 78 at 17.

[22] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

[23] ECF No. 90 at 8, 14–15.

[24] ECF No. 110 at 13.

[25] *Id.* at 14.

1  removed from his prison[-]industry job following the *alleged* conversation he had with Ben

2  Gutierrez."[26]  Even viewing this declaration in the light most favorable to Scott, at best it

3  confirms that *Scott claims* that a conversation happened, not that one actually did.  Because Scott

4  hasn't met his burden to come forward with supporting evidence on his retaliation claim, I grant

5  the defendants' motion for summary judgment on it.

6  **V.      Scott has not presented evidence to support his conspiracy claim.**

7           Scott also contends that after Gutierrez retaliated against him, Gutierrez and Clark-

8  Carrillo acted together to stop an investigation into Scott's grievance about the retaliatory

9  conduct.[27]  "To prove a conspiracy between" the defendants "under § 1983, an agreement or

10 meeting of minds to violate [Scott's] constitutional rights must be shown."[28]  Scott's conspiracy

11 claim rests on his suspicion that Gutierrez and Clark-Carrillo sought to cover up his grievances

12 about Gutierrez's conduct because Clark-Carrillo and Gutierrez should never have been involved

13 in the grievance process.  But Scott does not offer any evidence to support his theory that

14 Gutierrez and Clark-Carrillo ever agreed to violate his right to grievances.  Instead, he offers

15 mere speculation and asks me to infer, based on the surrounding circumstances, that the two at

16 some point agreed to prevent him from following through on his grievances.  Because this is not

17 sufficient to avoid summary judgment, I grant the defendants' motion on this claim as well.

18                                          **Conclusion**

19           IT IS THEREFORE ORDERED that the defendants' motion for summary judgment

20 **[ECF No. 90] is GRANTED:**

21

22 ───────────────────
   [26] ECF No. 91 at 42 (emphasis added).

23 [27] ECF No. 78 at 21.

   [28] *Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citation omitted).

- The First Amendment religion claims are dismissed against Defendants Lambey and Garcia; summary judgment on those claims is entered against Scott and in favor of Defendant Williams;

- Summary judgment is entered in favor of Defendants Williams, Lambey, and Garcia on Scott's Equal Protection Claim;

- Summary judgment is entered in favor of Defendant Gutierrez on Scott's retaliation claim;

- Summary judgment is entered in favor of Defendants Gutierrez and Clark-Carrillo on Scott's conspiracy claim.

With good cause appearing and no cause for delay, IT IS FURTHER ORDERED, ADJUDGED, AND DECREED **that the Clerk of Court is directed to ENTER PARTIAL JUDGMENT** in favor of Garcia, Lambey, Williams, Gutierrez, and Clark-Carrillo and terminate them as defendants in this case as no claims remain against them.  **This case proceeds against Defendants Johnny Youngblood, George Leaks, Michael Minev, Kim Thomas, Jerry Howell, and Frank Dreesen only**, as none of those defendants filed or joined in the motion for summary judgment**.**

IT IS FURTHER ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference**.  The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

U.S. District Judge Jennifer A. Dorsey
August 31, 2021